**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------x
                             :
CHRISTOPHER MITKOWSKI        :
                             :
v.                           : Civ. No. 3:18-CV-00425 (WWE)
                             :
ANDREW M. SAUL, ¹ COMMISSIONER,:
SOCIAL SECURITY ADMINISTRATION:
                             :
-----------------------------x
```

## <u>RULING ON CROSS MOTIONS</u>

Plaintiff Christopher Mitkowski brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §401 <u>et seq</u>. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #22]** is **DENIED.** Defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #23]** is **GRANTED.**

---

¹ The President nominated Andrew M. Saul to be Commissioner of Social Security and the Senate Confirmed his appointment on June 4, 2019, <u>vote number</u> 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

## I. ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff filed an application for SSI on February 7, 2014, alleging disability as of April 17, 2013. [Certified Transcript of the Record, Compiled on May 8, 2018, Doc. #19 (hereinafter "Tr.") 20, 197-204]. Plaintiff alleged disability due to "back, kidney problems and broken right ankle." [Tr. 93, 112]. His SSI claim was denied initially on September 4, 2014, and on reconsideration on December 30, 2014. [Tr. 20, 127-29, 138-40]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on February 7, 2015. [Tr. 20, 141].

On May 10, 2016, Administrative Law Judge ("ALJ") Deirdre R. Horton held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 41-92]. Vocational Expert ("VE") Frank D. Samlaska also testified at the hearing. [Tr. 76-91, 262-63]. On July 18, 2016, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 17-40]. Plaintiff filed a timely request for review of the hearing decision on September 20, 2016. [Tr. 190-93].

On January 12, 2018, the Appeals Council denied review, thereby rendering ALJ Kuperstein's decision the final decision of the Commissioner. [Tr. 1-6].

Plaintiff, represented by counsel, timely filed this action

for review and moves to reverse and/or remand the Commissioner's decision.

## II. STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial

evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (internal citations omitted).

It is important to note that in reviewing the ALJ's

decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Mr. Mitkowski must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); see also 20 C.F.R. §404.1520(c)

(requiring that the impairment "significantly limit[ ] ...

physical or mental ability to do basic work activities" to be

considered "severe").[2]

There is a familiar five-step analysis used to determine if

a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the

Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam). If and only if the claimant does not have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's

---

[2] DIB and SSI regulations cited herein are virtually identical.
The parallel SSI regulations are found at 20 C.F.R. §416.901 et
seq., corresponding to the last two digits of the DIB cites
(e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation

omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Horton concluded that plaintiff was not disabled under the Social Security Act. [Tr. 17-40]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 7, 2014, the application date. [Tr. 22].

At step two, the ALJ found that plaintiff had status post ORIF (open reduction internal fixation) right ankle fracture; degenerative disc disease; and affective disorder with generalized anxiety, all of which are severe impairments under the Act and regulations. [Tr. 22].

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (20 C.F.R. §§416.920(d), 416;925 and 416.926). [Tr. 24]. The ALJ specifically considered Listing 1.04 (disorders of the spine); 1.02B (major dysfunction of a joint); 12.04 (affective disorder); and 12.06 (anxiety disorder). [Tr. 24-26]. The ALJ also conducted a psychiatric review technique and found that plaintiff had a mild limitation in activities of

daily living and a moderate limitation in social functioning and
concentration, persistence or pace. [Tr. 25]. The ALJ found that
claimant had no periods of decompensation, which have been of
extended duration [Tr. 25].

Before moving on to step four, the ALJ found that plaintiff
had the residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 416.967(b)
> except he is able to perform simple, routine tasks
> with no work with the general public; he is able to
> work around others but should have only occasional
> direct interaction with coworkers.

[Tr. 26].

At step four, the ALJ found plaintiff was unable to
perform any past relevant work as a sheet rocker and taper.
[Tr. 32]. At step five, after considering plaintiff's age,
education, work experience and RFC, the ALJ found that jobs
existed in significant numbers in the national economy that
plaintiff could perform. [Tr. 32-33].

The ALJ concluded that plaintiff had not been under a
disability since February 7, 2014, the date of the
application. [Tr. 33].

## V.   DISCUSSION

Plaintiff makes several arguments in support of his position
that the ALJ's decision should be reversed and/or remanded. The
Court will address these arguments in turn.

### A.    Characterization of the Evidence

Plaintiff argues that the ALJ made factual errors or misstatements that require remand. [Doc. #22-2 at 7-11].

### 1.    Plaintiff's Mental Health

Plaintiff first objects to the ALJ's statements that plaintiff "presented no reliable evidence that he is mentally incapable of performing any activities that he chooses to perform" and that "the claimant was noted to have poor compliance with appointments and he was reportedly inconsistent with sobriety prior to June 2014." [Tr. 29-30 (citing Ex. 13F/3, 54, 66, 67)]. However, these statements are not a "mischaracterization" or "misstatement" of the evidence of record, but rather, it is the ALJ's conclusion regarding the evidence of record, which is supported by a summary of the treatment records. [Tr. 1558, 1621-22]. As the Commissioner correctly argues, the ALJ's "conclusion [was] properly reached based on the factors in 20 C.F.R. §416.929(c) and supported by substantial evidence." [Doc. #23 at 4].

The Court agrees with defendant that "[n]o medical source has specifically attributed Plaintiff's lack of compliance to the effects of his mental illness apart from the drinking." [Doc. #23 at 4 (citing Tr. 1558, 1579, 1659, 1871, 2569, 3006]. This medical evidence is substantial evidence that supports the ALJ's conclusion. Richardson, 402 U.S. 389, 401 (1971)("substantial evidence" is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'")(quoting Consolidated Edison Co. v. NLRB 305 U.S. 197, 229 (1938)). Nor has plaintiff cited to any evidence to support his argument. At most, plaintiff disputes the ALJ's conclusions regarding the evidence of record. The ALJ properly resolved this dispute, as she was required to do. See Richardson, 402 U.S. at 399 (holding that when there is a conflict in the medical evidence, "[t]he trier of fact has the duty to resolve the conflict."); see also, Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012), cert. denied, 133 S. Ct. 2881 (2013)("[W]e defer to the Commissioner's resolution of conflicting evidence.")(quoting Clark v. Comm'r, 143 F.3d 115, 118 (2d Cir. 1998)).

Similarly, plaintiff cites to two notations in the record to support the contention that plaintiff "does not understand the basic concept of e-mail." [Doc. #22-2 at 8 (citing Tr. 2844, 2853)]. These records show that plaintiff worked with a case worker and resolved the e-mail problems he was experiencing. [Tr. 2844 (while engaging in job searches and job applications plaintiff worked with a case worker to problem solve and received guidance), Tr. 2853 (case worker explaining on line job search engines and application process)]. Indeed, although the record shows that plaintiff had interacted on two occasions with staff requesting assistance with e-mail and job searches, his questions were resolved and there is also a notation that he was able to research home furnishings on a lap top computer. [Tr. 3166].

Other evidence of record cited by defendant demonstrated

that plaintiff does not have a cognitive impairment precluding any employment. [Doc. #23 at 5-6 (citing Tr. 30 (ALJ noting plaintiff's "demeanor at the hearing was normal and he demonstrated normal cognition and concentration with normal mood."); Tr. 2790 (noting that "veteran was appropriate in the interview, asking questions and communicating an understanding of the program and its goals."), Tr. 2796 (applied to 7 jobs and a few places in person); Tr. 2803, 2819, 3100, 3149, 3191 (demonstrating activities of daily living supporting the ALJ's conclusion); Tr. 3149 (case worker writing "No known barriers to compliance or learning."); Tr. 3166 (using a laptop to research home furnishings and speaking to organizations to get help with electric bills); Tr. 2856 (repairing his vehicle); Tr. 2803 (prepared Thanksgiving meal for residents of Brownell House); Tr. 3298 (noting apartment is well-maintained); Tr. 2839, 3191 (noting his good work as a housekeeper); Tr. 2786 (plaintiff stating "I can do any job. I learn fast and can do the full scope of any job with little training."); Tr. 2922, 3201, 3292, 3305, 3318; (treatment records indicating no evidence of serious deficit with cognition, memory, attention, concentration, insight or judgment); Tr. 2647 (Psychiatrist Dr. Robert Feeley stating plaintiff had "average ability/functioning" carrying out single and multi-step instructions, "sometimes a problem, or reduced ability" with persistence and pace)]. Plaintiff cites to no medical opinion to contradict Dr. Feeley's mental assessment.

The Court finds no error on this claim.

## 2.    Plaintiff's Work Activities

Plaintiff next asserts that the ALJ erred in finding that he "performs odd jobs for his brother" and "was noted to perform housekeeping services when he resided at Brownwell House." [Doc. #22-2 at 8 (citing Tr. 29)]. Plaintiff objects to this finding asserting that he testified that he "rarely" helped his brother and that he had to move out of Brownell House due to an inability to do these housekeeping services." [Doc. #22-2 at 8 (citing Tr. 72-73)]. Plaintiff has no other support for this position other than his testimony at the ALJ's hearing.

However, as set forth in the Commissioner's brief, there is other evidence in the record indicating plaintiff reported that he regularly assisted his brother with "odd jobs" a few hours a week including installing drywall and that he reported other employment, including for his brother, on multiple occasions. See Doc. #23 at 8 (citing Tr. 3291, 2865, 3159, 3290, 3304)]. Despite plaintiff's testimony at the hearing that working as a housekeeper "took a toll on me," the record demonstrates that he did a very good job as a housekeeper while a resident at Brownell House; interviewed for a full-time housekeeping position with the VA; and, upon discharge from Brownell House, asked if he could continue working until he secured other work. See Doc. #23 at 8-9 (citing Tr. 3191, 2839, 3179, 3173, 3288, 3286-89, 3164). As such, there is no error in the ALJ's recitation of evidence in the record.

## 3.    Plaintiff's Job Search

Plaintiff next objects to the ALJ's finding that "the

claimant reportedly sought VA services for vocational rehabilitation with notes indicating that he looked for work and followed up on all leads." [Tr. 30]. Specifically, Mitkowski states that he "did look for work, but he repeatedly reported that he is unable to work." [Doc. #22-2 at 9]. The Court has reviewed the evidence cited by plaintiff and finds it does not support for his contention that the ALJ's finding was error.

The first record cited by plaintiff from December 2013 was shortly after plaintiff was released from prison when he was seen complained he could not work due to low back pain. [Tr. 1340]. The clinician noted that plaintiff was drinking alcohol and was "given 20 5mg oxycodone two days ago, and has run through them.... However he told orthopedic PA that he was better two days ago. Chart is a testament to his substance abuse proclivities." [Tr. 1340]. The second record cited to by plaintiff in support of his argument is from March 19, 2014, one month after the application date, and he reported that he "helped a friend with stacking wood yesterday and is working for a friend taping this Friday and Saturday," adding that although the job stacking wood was difficult "his back was feeling better than he thought it would." [Tr. 1614 (emphasis added)]. Plaintiff also cites to two references in the record where he "reported depression due to being unable to locate work that he can perform." [Doc #22-2 at 9 (citing Tr. 1594, 1865)]. Plaintiff fails to mention that in one of the treatment records cited he reported that he "was hired by Shop Rite in Milford on 9/3/14 for an overnight shift but turned down the job due to the

transportation schedule. He stated the last bus to Milford was at 9:30 pm and he did not want to wait around for 1.50 hours 2x a week to get to work ahead of his shift." [Tr. 1865, 2199]. As set forth by the Commissioner, there is substantial evidence in the record to support the ALJ's finding that plaintiff "was looking for work throughout his treatment." [Tr. 30; see Doc. #23 at 9 (citing Tr. 2199, 2812, 2819, 2839, 3100, 3129, 3173, 3179, 3225, 3297, 3298)].

As such, there is no error in the ALJ's recitation of evidence in the record.

### 4.    Conservative Treatment

Finally, plaintiff takes exception with the ALJ's finding that "[s]ince the claimant's application date, he has sought treatment for residual problems of his right ankle fracture and back pain complaints and only conservative treatment has been recommended for his conditions." [Tr. 30]. As demonstrated by the Commissioner, substantial evidence supports the ALJ's finding.

The record demonstrates that plaintiff received conservative treatment for his low back pain and that diagnostic imaging showed there was "nothing structurally wrong." [Doc. #23 at 10 (citing Tr. 2571)]. Contrary to his assertion, plaintiff was not "prescribed heavy doses of Oxycodone." [Doc. #22-1 at 9 (citing Tr. 2600)]. Rather, a clinician noted that plaintiff was drinking alcohol and was "given 20 5mg oxycodone two days ago, and has run through them...However he told orthopedic PA that he

15

was better two days ago. Chart is a testament to his substance abuse proclivities." [Tr. 1340]. The treatment notes identify him as inappropriate for opioid pain control due to his substance abuse history and odor of ETOH on multiple visits. [Tr. 2600]. Indeed, plaintiff received

> [r]eassurance that above MRI is actually very encouraging & that as vet has not prev'ly seen a conservative care plan through for his back pain, he would be most benefitted at present time by PT as his pain is thought d/t muscle spasm. Encouraged an open mind about PT & told him that I have confidence in their ability to help him.

[Tr. 2575]. Plaintiff was informed that injections and/or surgery is invasive and considered last resort if prior conservative treatment fails. [Tr. 2575-76]. The treatment note further states that plaintiff expressed resistance to physical therapy and had a "long" history of no show to multiple appointments and that he was counseled that consistency "will be key to getting relief from his intermittent back pain." [Tr. 2576]. Defendant correctly states that "there is no evidence that plaintiff ever followed up with physical therapy" [Doc. #23 at 11 (citing Tr. 2982, 2928, 3090, 3129)], or that he mentioned "his back pain specifically at any later primary care visit, and the notes do not indicate that he received any treatment other than ibuprofen." [Doc. #23 at 11 (citing 2928, 2982, 3090, 3129)]. Accordingly, substantial evidence supports that ALJ's finding that plaintiff received conservative treatment for lower back pain.

Similarly, substantial evidence support the ALJ's finding

16

that during the disability period under consideration, plaintiff received conservative care for his right ankle pain. Plaintiff's right ankle injury and January 2013 open reduction internal fixation ("ORIF") surgery predated his SSI application date of February 7, 2014. Since the application date, diagnostic imaging was "unremarkable" showing no hardware failure or any remarkable abnormality. [Tr. 1857, 2243]. Plaintiff treated with an ankle brace [Tr. 2060, 2928], ibuprofen and lidocaine patch [Tr. 2899, 2928, 2986]. On examination he experienced no pain, ambulated "seemingly" within normal limits and walked without an assistive device. [Tr. 2932]. In July 2015, PA Vitale noted that plaintiff had a follow-up appointment with an orthopedist on July 30, 2015, however, there are no orthopedic treatment records for this date. [Tr. 2933]. Plaintiff cited to no evidence of record that he complained of ankle pain at future primary care appointments or that he treated with an orthopedist. See Tr. 3090, 3129. Accordingly, substantial evidence supports the ALJ's finding that plaintiff received conservative treatment for right ankle pain.

Whether there is "substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports _the ALJ's decision_. Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(emphasis in original) (citing Selian v. Astrue, 708 F.3d 409, 417 (2d Cir.2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld.");

Talavera*,* 697 F.3d at 151 (limiting our review to "determining whether *the* SSA's conclusions were supported by substantial evidence" (emphasis supplied))).

**B. Substantial Evidence Supports the ALJ's RFC Determination.**

Plaintiff argues that the ALJ failed to account for certain limitations of plaintiff in formulating an RFC assessment. He argues that the ALJ "should" have: (1) limited plaintiff to no interaction with co-workers and restricted his work to private settings; (2) included limitations to understanding and completing even simple instructions; (3) accounted for plaintiff's "off-task behavior" and impulsivity; (4) limited plaintiff to quiet environments; and (5) limited plaintiff to sedentary work.[Doc. #22-2 at 11-21]. Defendant generally responds that the RFC is supported by substantial evidence. [Tr. 23 at 12-23].

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1).

When identifying a claimant's RFC, the ALJ must engage in a two-step process. First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that

could reasonably be expected to produce the symptoms alleged; if so, then the ALJ must consider the extent to which any alleged functional limitations that are due to such symptoms are reasonably consistent with objective medical evidence and other evidence. Barry v. Colvin, 606 F. App'x 621, 623 (2d Cir. 2015) (citing 20 C.F.R. §404.1529(a). Part of the evaluation of a claimant's RFC includes making "a finding on the credibility of the individual's statements based on a consideration of the entire case record." Robinson v. Colvin, No. 3:14CV683 (JGM), 2015 WL 4759068, at *3 (D. Conn. 2015) (quoting SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996)).

Plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

### 1. Interaction with Coworkers

Plaintiff contends that the ALJ should have limited him to "no coworker interaction and work in a private setting." [Doc. #22-2 at 12]. In support of that position, the plaintiff relies

19

on the opinion of Psychiatrist Dr. Feeley.

The ALJ's RFC determination provides that plaintiff "is able to work around others but should have only occasional direct interaction with coworkers." [Tr. 26]. That finding is supported by the December 2014 opinion of plaintiff's psychiatrist Dr. Feeley who found that there is "sometimes a problem or reduced ability" with social interaction including "interacting appropriately with others" and "getting along with others without distracting them or exhibiting behavioral extremes." [Tr. 2646]. Also in December 2014, State agency psychologist Dr. Lindsey Harvey, Ph.D. found plaintiff was "moderately" limited interacting with the general public and getting along with coworkers or peers, but found no significant limitations maintaining socially appropriate behavior, accepting instructions and responding appropriately to criticism from supervisors. No significant limitations were assessed. [Tr. 121-22].

Neither of these opinions support plaintiff's contention that the ALJ should have limited him to no coworker interaction and work in a private setting. Both mental health opinions support some capacity to interact with others in a work setting.

Significantly, the treatment records indicate that plaintiff's anger problems and mood improved after he got sober in July 2014. [Tr. 2894 (reporting that "he feels that his anger

has improved after stopping his drinking."); Tr. 3201 ("improved mood after stopping drinking")]. Plaintiff reported sleeping well and improved anxiety while taking medication. [Tr. 3201; 3291]. In recent psychiatric treatment notes, plaintiff repeatedly indicated that he was doing well and exhibited no difficulty with communication, behavior or cooperation during these visits. [Tr. 2802, 3201, 3291, 3304, 3317].

Last, as previously set forth in this opinion, plaintiff's activities of daily living support the ALJ's RFC determination that plaintiff can tolerate "occasional direct interaction with coworkers." [Tr. 26].

The Court agrees with the reasons set forth by the Commissioner , and the objective medical evidence cited in his brief, to show that the ALJ's RFC determination was supported by substantial evidence. [Doc. #23 at 12-23].

The ALJ's RFC finding regarding interaction with coworkers is supported by substantial evidence.

## 2.   Simple, Routine Tasks

The ALJ's RFC determination provides that plaintiff "is able to perform simple, routine tasks." [Tr. 26]. Plaintiff argues that the "ALJ should have included limitations as to Mr. Mitkowski's ability to understand and complete even simple instructions" and "should have included a provision in her RFC description requiring frequent supervision and reminders about

how to perform work tasks." [Doc. #22 at 13 (emphasis added)].

Once again plaintiff reiterates his difficulties with e-mail and the computer generally. The Court has previously addressed this contention and finds that substantial evidence supports the ALJ's finding.

The Commissioner correctly asserts that there is no opinion of record to support a more restrictive RFC. Treating Psychiatrist Dr. Feeley described plaintiff's cognitive functioning as "fine," with normal attention and concentration and opined that he had an average ability to carry out both simple and multi-step instructions, focus long enough to complete simple tasks, and change from one simple task to another. [Tr. 2645, 2647]. Dr. Feeley, however, found that plaintiff would sometimes have a problem performing basic activities at a reasonable pace and persisting in simple activities without interruption from symptoms. [Tr. 2647]. State agency Psychologist Dr. Harvey, found no limitation in the areas of understanding and memory, or sustained concentration and persistence. [Tr. 121]. The medical opinions of record support the ALJ's RFC.

As previously set forth in this opinion objective medical evidence of record support the ALJ's RFC. [Tr. 2894, 3201 (mood and anger improved with sobriety); Tr. 2895, 2956, 3201, 3291 (sleep difficulty and anxiety improved with medication); Tr. 2922, 3201, 3292, 3305, 3318 (treatment notes throughout indicated no evidence of serious deficit of cognition, memory, attention, concentration, insight or judgment).

Moreover, the ALJ had the opportunity to personally observe plaintiff and his testimony, something the Court cannot do.

Finally, as set forth in this opinion, plaintiff's daily activities provide substantial evidence that he can perform simple routine tasks. [Tr. 228-31 (reporting he maintains grooming, hygiene, dress, does laundry and "light cleaning", maintain finances and shopping); Tr. 3147, 3316 (maintained relationships with family and friends); Tr. 2803 (prepared a Thanksgiving meal for housemates); Tr. 3147 (regularly attended Church); Tr. 3210 (worked up to 20 hours per week as a housekeeper at a group home); Tr. 2856 (repaired his vehicle)]. As discussed, with treatment and sobriety, plaintiff was eventually able to obtain and maintain his own apartment and live independently. [Tr. 3298].

Accordingly, substantial evidence of record supports the ALJ's RFC limitation that plaintiff is able to perform simple, routine tasks.

### 3. Off-Task Behavior

Plaintiff next contends that the "ALJ should have accounted for Mr. Mitkowski's off-task behavior in her RFC description." [Doc. #22-2 at 14]. He argues that he has a long track record of forgetting appointments, or arriving for them at inappropriate times, and of impulsive behavior. In support, he argues that the Vocational Expert opined at the Administrative Hearing that if an individual had a reduced ability to perform at a reasonable pace for 10% to 15% of the workday that would eliminate all available jobs. [Doc. #22-2 at 14 (citing Tr. 88-89)].

However, there is no medical opinion of record that plaintiff had any more than "some" difficulties with persistence or pace, to render plaintiff off task for any significant period of time. [Tr. 121, 2647]. As previously discussed, Dr. Feeley opined that plaintiff had normal attention and concentration and State agency physician Dr. Harvey found no limitations to sustained concentration and persistence. [Tr. 121, 2645]. Other evidence of record recited above demonstrates that plaintiff had no serious limitation with maintaining a reasonable pace in a work setting.

Accordingly, the Court finds there is no error on this claim.

### 4. Quiet Environment

Next, plaintiff argues that the "ALJ should have limited Mr. Mitkowski to only quiet environments" due to a "10% service-connected disability for tinnitus;" "speech discrimination abilities of 48% on the right and 100% on the left;" "mild to severe/profound sensorineural hearing loss on the right and moderate to severe sensorineural hearing loss on the left;" and use of a hearing aid. [Doc. #22-2 at 14-15 (citing 1384, 1407, 1577, 2004-05, 2053)]. Despite these facts, substantial evidence supports the ALJ's RFC finding.

First, no opinion evidence suggests any hearing limitation that would require work in a quiet environment. Consultative Examiner Dr. Adrian Klufas, did not assess any hearing limitation. [Tr. 1627-28]. When plaintiff attended the medical consultative examination he did not report any hearing problems

and Dr. Klufas found that his "hearing was good." [Tr. 1626-27].
Nor did the State agency medical consultants Drs. Anita Bennett
or T. Bessent assess a severe hearing impairment.[Tr. 106-08;
117, 119-21].

Moreover, treatment records support a finding that
plaintiff's hearing loss produced no significant limitations.
The Commissioner argues, and the Court agrees, that in light of
plaintiff's lack of sustained audiological treatment, the
absence of any significant observed difficulties by his
treatment providers, the opinion evidence finding no significant
limitation, activities of daily, and inconsistent use of his
hearing aid, the ALJ was not required to restrict plaintiff to
quiet environments. [Doc. #23 at 19]. The Court has carefully
reviewed the evidence of record cited by defendant and finds
that substantial evidence supports the ALJ's RFC. See Doc. #23
at 18-20 (citing Tr. 2813 (plaintiff no-show to his last
scheduled audiology appointment); Tr. 3129-31, 3090 (plaintiff
did not report significant hearing difficulties to primary care
provider); Tr. 2200, 3007, 3291, 3304, 3317 (treating
psychiatrist noting no hearing difficulties)]. Indeed plaintiff
cited to no evidence of observed hearing difficulties by his
treating providers or in the context of participating in the
veterans' compensated work program or in applying for jobs or
trying to obtain and maintain an apartment. See Doc. #23 at 19
(citing to the record).

Further, the ALJ had an opportunity to observe plaintiff at
the hearing and found that he "was able to testify at the

25

hearing without any difficulty or noticeable hearing issues, even without a hearing aid." [Tr. 23, 68-69]. Plaintiff testified that he has a 10% service-connected disability to his right ear and "should be wearing" a hearing aid because when he wears his hearing aid it "makes a difference." [Tr. 68-69]. As noted by defendant, the ALJ's hearing was not the only time that plaintiff did not wear his hearing aid. [Tr. 3287 (reporting that he had "hearing loss in the right ear, patient has a hearing aid, that he did not bring with him.")].

Accordingly, the Court finds no error on this claim.

### 5. Sedentary Work

Last, plaintiff argues that the ALJ should have limited him to sedentary work. [Doc. #22-2 at 15-21]. Plaintiff mainly argues that due to ankle and back pain, he could not "perform the standing and walking necessary to perform light exertion work."[3] [Doc. #22-2 at 15]. The Court finds that there is

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §416.967(b).

substantial evidence to support the ALJ's finding that plaintiff
is capable of light work with some limitations. [Tr. 26].

No opinion evidence supports the plaintiff's assertion that
he should be limited to sedentary work. See Tr. 107-08 and 119-
21 (State agency doctors assessed a physical RFC of medium work,
but allowed for greater lifting and carrying up to 50 pounds
occasionally and 25 pounds frequently); Tr. 1627-28 (CE Dr.
Klufas did not assess limitations more restrictive than light
work); Tr. 2169 (In November 2014, orthopedist Dr. Tamara Johns
noted "X-rays demonstrate [ankle] hardware intact with no
evidence of loosening or failure;" observing "no obvious
difficulties" ambulating and "non-antalgic gait;" "unclear
etiology of pain;" "should continue with light duty.")].

As previously set forth in this opinion, plaintiff received
conservative treatment for back and ankle pain. See supra at 15-
18. Treatment notes from plaintiff's primary care providers
indicate no deficits of gait or station and indicate that
plaintiff did not need or use an assistive device. [Tr. 2932].
Although CE Dr. Klufas observed some gait abnormalities, he
observed that plaintiff walked without an assistive device. [Tr.
1627]. The doctor also noted that plaintiff was somewhat
agitated during the exam, had a strong odor of alcohol on his
breath and stated that plaintiff reported he "had to take an eye
openers as he called it this a.m. in order to relieve that
pain." [Tr. 1626]. Diagnostic imaging of plaintiff's back and
right ankle were also unremarkable. [Tr. 1857, 2243, 2571].

Finally, as previously stated, plaintiff's activities of

daily living demonstrate an ability to perform light work. There is no objective evidence of record that plaintiff had physical difficulties working as a housekeeper for up to 20 hours per week or that he was unable to apply for full time work as a housekeeper. [Tr. 3191, 3210, 3288]. Other skills of daily living included repairing his truck, preparing a Thanksgiving meal for housemates, maintaining his apartment and plaintiff reported that he "often" walked to the VA Hospital from the West Haven train station. [Tr. 2200, 2856, 2803, 3298].

Accordingly, substantial evidence supports the ALJ's finding that plaintiff had the capacity to perform light work.

### C.  Step Five Analysis

Finally, plaintiff argues that the ALJ should have applied Medical-Vocational Rule 201.14, which directs a finding of "disabled." [Doc. #22-2 at 21 (citing 20 C.F.R., Pt. 404, subpt. P, App. 2 §201.14)]. Plaintiff acknowledges, however, that this argument is predicated on the ALJ finding plaintiff capable of only sedentary work. As set forth above, substantial evidence supports the ALJ's finding that plaintiff is capable of light work with limitations.

Accordingly, the Court finds that the ALJ properly applied Medical-Vocational Rule 202.14, and found plaintiff not disabled with the assistance of vocational expert testimony.[Tr. 33]. On this basis there is no step five error.

### VI.  CONCLUSION

For the reasons stated, plaintiff's Motion for Order

Reversing the Decision of the Commissioner or in the Alterative

Motion for Remand for a Hearing **[Doc. #22]** is **DENIED.**

Defendant's Motion to Affirm the Decision of the Commissioner

**[Doc. #23]** is **GRANTED.**

   The plaintiff's complaint [Doc. #1] is **DISMISSED with**

**prejudice.** The Clerk of the Court is directed to enter judgment

and close the case.

   SO ORDERED at Bridgeport, Connecticut this 17th day of July

2019.

                          _____/s/_____
                          WARREN W. EGINTON
                          SENIOR UNITED STATES DISTRICT JUDGE